Filed 2/28/24  Rivas v. Artisan Glass & Design CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| DORA RIVAS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ARTISAN GLASS & DESIGN, INC. et al.,<br><br>    Defendants and Respondents. | B326870<br><br>(Los Angeles County Super. Ct. No. 22AHCV00547) |


APPEAL from an order and judgment of the Superior Court of Los Angeles County, Colin P. Leis, Judge.  Affirmed.

Law Offices of Philip P. DeLuca and Philip P. DeLuca, for Plaintiff and Appellant.

Buus Law Group and William L. Buus, for Defendants and Respondents.

————————————

Plaintiff and appellant Dora Rivas (Rivas) appeals the trial court's order granting defendants and respondents Artisan Glass Design, Inc., Renee Heston, and Tom Garlock's (collectively Defendants) special motion to strike her causes of action for breach of contract, common counts, and fraud pursuant to Code of Civil Procedure[1] section 425.16 (Anti-SLAPP motion).

We affirm the trial court's order granting Defendants' Anti-SLAPP motion and the trial court's judgment dismissing the case with prejudice.[2]

## FACTS AND PROCEDURAL HISTORY

### *Settlement Negotiations in the Prior Employment Discrimination Case*

Prior to the present litigation, Rivas filed a complaint against Defendants, who were her former employers, alleging multiple causes of action relating to discrimination and harassment in the workplace.

On June 10, 2022, the parties participated in a mandatory settlement conference (MSC) held remotely before Judge Pro Tempore L. Eugene Hallsted (Temporary Judge Hallsted). Philip DeLuca (DeLuca) represented Rivas, and Angela Serranzana (Serranzana) represented Defendants.

---

[1] All future statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] We construe Rivas's appeal to include an appeal from the judgment.

2

Immediately following the MSC, Temporary Judge Hallsted sent an e-mail to the parties stating that in his opinion the current value of the settlement was $125,000.00, which the parties could accept before 11:30 a.m. that day.  At 10:51 a.m., DeLuca e-mailed Temporary Judge Hallsted, "I hereby accept the Mediator's proposal of $125,000 on behalf of Plaintiff, Dora Rivas.  Thank you."  At 11:31 a.m., Serranzana e-mailed Temporary Judge Hallsted, "We'll accept the offer."[3]  At 12:06 p.m., Temporary Judge Hallsted e-mailed the parties and informed them that both sides had accepted his proposal to settle all claims for payment of $125,000.00 in exchange for full release of all of Rivas's claims including attorney fees and costs, and dismissal of the case with prejudice.  The e-mail instructed Rivas to prepare and file a notice of settlement of the entire action and to request that that the court set a hearing to show cause regarding dismissal within 30 days.  DeLuca filed a notice of unconditional settlement on the same day.  The notice stated that Rivas would file a request for dismissal within 45 days of June 10, 2022.

On June 14, after considering the notice of unconditional settlement of the entire case, the trial court issued an order to show cause regarding dismissal and set a hearing on the matter for August 15.

On June 24, DeLuca sent an e-mail to Serranzana regarding the status of the settlement check.  Serranzana responded that she sent a draft agreement to DeLuca on June 13, but had not received his response or any proposed revisions.  DeLuca stated that he had not received the draft agreement.  Serranzana e-mailed DeLuca the draft agreement on June 28.

_____

[3] Neither party copied the other on their e-mail response to Temporary Judge Hallsted.

The draft agreement included a provision for Defendants to pay Rivas $125,000.00 in 12 monthly installments. That same day, DeLuca e-mailed Serranzana and informed her that Rivas rejected the proposed payment plan, which was not contemplated in the course of the settlement agreement. DeLuca stated that if Defendants did not tender payment of $125,000.00 in a single lump sum, Rivas would file a motion to enforce the settlement pursuant to section 664.6.

On July 26, Rivas filed a motion to enforce the settlement. Rivas asserted that the parties had reached a settlement—they "agreed to a specific sum, with no other terms outlined in the record" and counsel filed a notice of unconditional settlement of the entire case without objection from Defendants. Rivas claimed Defendants were "delaying the completion of the settlement by intentionally and purposefully attempting to add new terms to the settlement agreement"—specifically, a 12-month payment plan that the parties had not previously discussed. The proposed payment plan was a change of a material term to which Rivas had not agreed.

The court set a hearing on the motion to enforce the settlement for October 3, vacated the order to show cause regarding dismissal, and continued the jury trial to January 30, 2023.

Defendants opposed the motion to enforce settlement on the basis that there was no underlying settlement agreement to enforce. Section 664.6 requires a stipulation in writing outside the court or an oral stipulation before the court. The parties had not executed a written agreement setting forth material terms of the settlement and had not orally stipulated to material terms of a settlement agreement before the court. The only term

4

discussed at the MSC was the total amount to be paid to Rivas. At best, the parties had a tentative agreement.

The court denied the motion to enforce the settlement, stating: "[T]hese emails indicate the Mandatory Settlement Conference was <u>concluded</u>. The temporary judge tried to get resolution by suggesting his thoughts on settlement value at $125,000. Although the defense responded *after* the prescribed time, neither side disputes that the parties agreed to the $125,000 figure. What is unstated thereafter is whether other terms were involved—and if so, what they were . . . . It is clear the positions advanced by counsel from both sides that each disagrees as to what the deal was." The court stated that nothing was placed on the record or in a signed writing executed by the parties as to the key terms of the agreement. The court could not create the terms of the settlement under section 664.6. Absent definite terms and a showing that the parties met the requirements of section 664.6, there was no enforceable contract. The court denied the motion.

### *The Complaint*

#### Allegations

On August 4, 2022, Rivas filed a form complaint (the complaint), which alleged causes of action for (1) breach of contract, (2) common counts, and (3) fraud.[4] Attached forms relating to the individual causes of action included:

---

[4] Serranzana was a named defendant. She is not a party to this appeal.

5

"FIRST CAUSE OF ACTION—Breach of Contract," which alleged that, on June 10, 2022, the parties entered into an oral agreement memorialized by a court order dated June 10, 2022. The form reflected that the essential terms of the agreement were: "That Defendant Artisan Glass & Design, Inc. would pay Plaintiff Dora Rivas in the matter to Rivas v. Artisan Glass & Design, Inc." On or about June 27, 2022, Defendants breached the agreement by "Refusing to pay the lump sum unconditional settlement that was judicially supervised by temporary Judge Eugene Hallsted and agreed to by all parties at the June 10, 2022 Mandatory Settlement with all obligations to be completed within thirty (30) days." Rivas claimed she was harmed by Defendants' attempt "to unilaterally change the [unconditional settlement] to a conditional settlement predicated upon a payment plan that was not part of the acceptance of the mediator's (temporary Judge's) proposal."

"SECOND CAUSE OF ACTION—Common Counts" alleged that Defendants became indebted to Rivas "[o]n June 10, 2022[,] for the agreed sum of $125,000.00 in a judicially supervised settlement in the matter of Rivas v. Artisan Glass & Design, Orange County Superior Court Case No.: 30-2021-01181131." The space on the form where the plaintiff is to allege the amount unpaid and owing was left blank.

"THIRD CAUSE OF ACTION—Fraud" alleged Defendants "accepted an unconditional settlement in the matter of Rivas v. Artisan Glass & Design, Orange County Superior Court, Case No. 30-2021-01181131 for the gross sum of $125,000.00 with all terms to be complete within 30, but no later than 45 days." Defendants "fraudulent[ly] induced plaintiff to enter into the agreement for an unconditional settlement with the intent to

6

make it conditional, predicated upon a 12[-] month payment plan." Defendants knew their statements were false and concealed their true intentions. Rivas justifiably relied on Defendants' statements, and was damaged by Defendants' failure to pay the lump sum settlement of $125,000.00 within 30 to 45 days of June 10, 2022, as agreed.

**Attachments**

The following documents were attached to the complaint:

Exhibit 1, Temporary Judge Hallsted's e-mail to counsel regarding his valuation of the settlement, dated June 10, 2022, which states:

"The MSC has ended. The mediator's opinion of the present value for settlement at this time of the case of Rivas v. Artisan Glass OCSC Case #30-2021-001181131 [sic] is $125,000.00 which is open for acceptance by both parties by 11:30 a.m. today; Otherwise it is rejected. The MSC is off calendar and the presently set trial date is to remain."

Exhibit 2, Temporary Judge Hallsted's e-mail to counsel regarding acceptance of the proposal, dated June 10, 2022, which states:

"I understand all the participants have accepted the mediator's proposal to settlement [sic] all claims of plaintiff for payment of $125,000.00 in return for execution by all parties of a full release of all claims of plaintiff, including attorney fees and costs of suit and a dismissal with prejudice of OCSC Case #30-2021-01181131. Plaintiff will prepare and file a notice of settlement of the entire action with a request to set an OSC re: dismissal within 30 days."

7

Exhibit 3, minute order of the Orange County Superior Court, Central Justice Center, Dept. C15, dated June 10, 2022, which states: "Case is settled. Plaintiff to file a Notice of Settlement and Request for Dismissal with prejudice. [¶] All dates to remain as set until the Notice of Settlement is filed. [¶] Court orders Clerk to give notice."

Exhibit 4, a form entitled "NOTICE OF THE SETTLEMENT OF THE ENTIRE CASE" dated June 10, 2022, which indicates that the June 10, 2022 settlement was unconditional, and that a request for dismissal would be filed within 45 days of the settlement. The form reflects that the trial date was set for October 31, 2022. DeLuca executed the document.

***Defendants' Anti-SLAPP Motion***

Defendants filed a motion to strike the complaint under the Anti-SLAPP statute, arguing that Rivas's claims were based solely on communications between the parties during settlement negotiations in the employment discrimination case, which were protected activity. Moreover, Rivas could not demonstrate a probability of prevailing on her claims because the parties did not enter into a settlement agreement, and all of Rivas's claims were based on confidential settlement communications that were privileged under Civil Code section 47, subdivision (b), and under the mediation privilege set forth in Evidence Code sections 1119 and 1154.

Defendants attached the face page of the complaint in the employment discrimination case, Rivas's motion to enforce the settlement agreement in the employment discrimination case

8

pursuant to section 664.6, Rivas's ex parte application to advance and shorten time on the hearing on the motion to enforce the settlement, Rivas's motion to reconsider the court's denial of her application to advance or shorten time on the hearing on the motion to enforce the settlement, and the complaint in the instant case.

Defendants filed Serranzana's declaration in support of the motion, and later filed Serranzana's corrected declaration with exhibits, and a notice of errata regarding exhibits attached to Serranzana's Declaration.

## *Opposition*

Rivas filed an opposition to Defendants' Anti-SLAPP motion. She argued that Defendants had not shown that engaging in settlement agreements was protected activity under the Anti-SLAPP statute, because the settlement communications were not privileged under Evidence Code sections 1119 and 1154. Rivas further argued that she had met the burden of showing a probability of success on her claims. Rivas claimed that eight written communications between counsel for the parties, Temporary Judge Hallsted, and the court demonstrated that a contract existed between the parties and that the contract had been breached. Rivas stated that she "performed under the conditions of the contract by filing a Notice of Settlement with a request for dismissal within thirty (30) days, by identifying the Settlement as 'Unconditional' . . . and any further performance, to wit, Release of All Claims, including attorney fees and costs, has been excused due to Defendant's breach of the contract, to wit, 'payment of $125,000.00' within thirty (30) days to permit a

9

Dismissal of the action." "Plaintiff has been harmed, to wit, she has not received her payment of $125,000.00 and the Orange County action has not been dismissed, but rather it has been scheduled for Jury Trial on January 30, 2022." Defendants knew they wanted an installment plan, but concealed this fact to fraudulently induce Rivas to enter into the settlement agreement so that they could avoid preparing for trial.

Rivas filed DeLuca's declaration in support of the opposition, and attached the documents Rivas previously filed with the complaint (Exhibits 1-4), as well as an e-mail from Serranzana to Temporary Judge Hallsted on June 10, 2022, stating "We'll accept the offer." (added to Exhibit 2); the court's June 14, 2022 minute order issuing the order to show cause (Exhibit 5); e-mails between counsel regarding the draft agreement and payment dispute, with the draft settlement agreement attached (Exhibits 6-9); Defendants' opposition to Rivas's ex parte application to shorten time for the motion to the enforce settlement (Exhibit 10); a minute order reflecting the court's order, dated August 3, 2022, denying Rivas's ex parte application to shorten time for the motion to enforce the settlement (Exhibit 11); a minute order reflecting the court's order, dated August 10, 2022, granting in part Rivas's ex parte application for reconsidering and revoking the court's order denying Rivas's ex parte application to shorten time for the motion to enforce the settlement (Exhibit 12); Defendants' opposition to the motion to enforce the settlement (Exhibit 13); and a minute order reflecting the court's order denying the motion to enforce the settlement (Exhibit 14).

### *Trial Court's Ruling*

On December 6, 2022, following a hearing on the matter, the court granted Defendants' Anti-SLAPP motion. The court found that because the judge in the employment discrimination case ruled under section 664.6 that there was no enforceable settlement agreement, Rivas's causes of action were necessarily based solely on Defendants' statements during the MSC. Statements made in the course of a settlement conference are protected under section 425.16, subdivision (e)(1). Rivas could not show a probability of prevailing on her causes of action for breach of contract and fraudulent inducement[5] because there was no underlying contract to support her claims. The court awarded Defendants attorney fees and costs.

Rivas timely appealed the trial court's order granting Defendants' Anti-SLAPP motion.

A judgment of dismissal was entered on February 2, 2023.

## DISCUSSION

### *Statutory Scheme and Standard of Review*

The Legislature enacted the anti-SLAPP statute to protect defendants from meritless lawsuits brought primarily to discourage the defendants from exercising their constitutional

---

[5] Neither the parties nor the trial court separately addressed Rivas's cause of action for common counts. Although Rivas lists common counts among her causes of action, she provides no argument with respect to that cause of action in her briefing to this court.

11

rights to speak and petition on matters of public significance. (§ 425.16, subd. (a); *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009.) To accomplish this purpose, the statute authorizes a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

" ' "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.]" ' [Citation.] The court considers the elements of the claim and the acts of the defendant satisfying those elements that form the basis for liability. [Citation.] 'The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. [Citation.]' [Citation.] . . . The moving party may argue that the allegations arise from protected activity, even when the party disputes the truth of the allegations. [Citation.]" (*Pech v. Doniger* (2022) 75 Cal.App.5th 443, 456.)

" ' "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.

It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' " [Citation.] The grant or denial of an anti-SLAPP motion is reviewed de novo.' " (*Pech v. Doniger, supra*, 75 Cal.App.5th at pp. 456–457.)

"In making its determination, the court considers the pleadings and the evidence submitted in connection with the proceeding to provide the facts supporting the liability or defense. (Code Civ. Proc., § 425.16, subd. (b)(2).)" (*Pech v. Doniger, supra*, 75 Cal.App.5th at p. 457.)

### First Prong: Activity Protected Under the Anti-SLAPP Statute

We reject Rivas's argument that the allegations of the complaint are not based on protected petitioning activity because the parties' settlement communications are not privileged under Evidence Code sections 1119 and 1154. Whether the settlement communications are privileged is not the relevant inquiry. Even if we assume for the sake of argument that the parties' communications are not privileged, they are communications made for the purpose of resolving the litigation and were made while the litigation was pending.

" 'The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation. [Citation.] Indeed, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section

13

425.16." ' " (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 33.) " ' "Under the plain language of section 425.16, subdivisions (e)(1) and (2), as well as the case law interpreting those provisions, *all* communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." ' [Citation.] Cases construing the anti-SLAPP statute hold that 'a statement is "in connection with" litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.' [Citation.] Consequently, because settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2). [Citation.] The protection of the anti-SLAPP statute applies 'even against allegations of fraudulent promises made during the settlement process.' [Citation.]"[6] (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113–114.)

---

[6] Section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

The statements at issue concerned the valuation of Rivas's employment discrimination claims, and were therefore clearly related to substantive issues in the litigation. Moreover, they were made by and to the parties and their counsel, who were unquestionably interested in the litigation. Defendants have met their burden of demonstrating that the conduct upon which the allegations of the complaint are based is protected under section 425.16, subdivisions (e)(1) and (e)(2).

### *Second Prong: Probability of Success on the Merits*

Because Defendants have demonstrated that the settlement communications are protected activity under the Anti-SLAPP statute, the burden shifts to Rivas to show that her claims have " ' " 'the requisite minimal merit [to] proceed.' " ' " (*Pech v. Doniger*, *supra*, 75 Cal.App.5th at p. 456.)

As to Rivas's first cause of action, breach of contract requires "the existence of a contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and resulting damages." (*Professional Collection Consultants v. Lujan* (2018) 23 Cal.App.5th 685, 690.) Initially, we note that Rivas contends in her complaint that she had a contract for payment of a lump sum. However, there is no evidence to support that there was such a payment term; indeed, the court that oversaw the case in which the settlement agreement was drafted concluded that the evidence showed that the parties failed to reach a meeting of the minds on that issue. Further, applying general principles of contract law, we conclude that Rivas has failed to provide evidence that a contract exists. "In order for acceptance of a proposal to result in the formation of a contract, the proposal

15

'must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain.' [Citation.] A proposal ' "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." ' " (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.) Here, the parties agreed to an overall sum, and nothing more. There was no agreement as to when the amount to be paid was due, nor whether the amount was to be paid as a lump sum or in installments. The timing of payment was clearly a material term—it is the sole object of the instant lawsuit. Moreover, although Temporary Judge Hallsted sent an e-mail to the parties indicating that there would be a " 'full release of all claims of plaintiff' " and a waiver of attorney fees and costs, no specific details were agreed upon as to those terms, either. Because the terms are not definite there can be no contract, and thus no possibility that Rivas could prevail on her first cause of action.

As to her second cause of action, Rivas does not set forth the elements of a cause of action of common counts or discuss common counts in her briefing with this court. She has therefore waived any argument regarding the probability of success on that claim. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 ["the claim is omitted from the opening brief and thus waived"].)

Finally, Rivas has not demonstrated a probability of prevailing on her third cause of action for fraud. " 'The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations.] Fraud in the inducement is a subset of the tort of fraud. It "occurs when ' "the promisor knows

16

what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." ' " ' [Citations.]" (*Dhital v. Nissan North America, Inc.* (2022) 84 Cal.App.5th 828, 838–839.)  Here, there is no contract between the parties; Rivas cannot have been induced to enter into a contract that does not exist.

## DISPOSITION

We affirm the trial court's order granting Defendants' motion to strike pursuant to Code of Civil Procedure section 425.16 and the trial court's judgment dismissing the case with prejudice.  Respondents Artisan Glass Design, Inc., Renee Heston, and Tom Garlock are awarded their costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


I concur:


KIM, J.

17

Dora Rivas v. Artisan Glass & Design, Inc., et al.
B326870


BAKER, Acting P. J., Concurring in Part and Dissenting in Part


I agree that all of plaintiff and appellant Dora Rivas's (plaintiff's) causes of action against defendants and respondents Artisan Glass & Design, Inc., Renee Heston, and Tom Garlock arise from activity protected by the anti-SLAPP statute (Code Civ. Proc., § 425.16). I also agree plaintiff made no "minimal merit" showing of a probability of success (see generally *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009) on her cause of action for common counts. That is where the agreement ends.

I would reverse the trial court's determination that plaintiff made no showing of a probability of success on her breach of contract and fraud claims. As to the former, the majority concludes she has no probability of prevailing because the agreement between her and defendants was too indefinite; in the majority's words, "[t]here was no agreement as to when the amount . . . to be paid was due, nor whether the amount was to be paid as a lump sum or in installments." But this sees a flaw where none exists. Contract law permits implying the term that the majority thinks is missing. (Civ. Code, § 1657 ["If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the

payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained"].)  As to the latter (the fraud claims), the majority just reads plaintiff's complaint too narrowly.  Plaintiff's theory of fraud is not just that defendants induced her to enter the settlement agreement.  Plaintiff also alleges a theory of promissory fraud, the success of which does not depend on whether a valid contract was formed.  (See generally *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 ["'Promissory fraud' is a subspecies of the action for fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud"].)


BAKER, Acting P. J.

2